UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

SEP 29 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-582-GWU

WILLIAM K. MOSLEY
C/O LISA MOSLEY,                                                          PLAINTIFF

VS. ·                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT

### INTRODUCTION

Lisa Mosley appeals from the negative administrative decision on her son

William K. Mosley's  application for Child's Supplemental Security Income (SSI)

benefits.  The case is before the Court on cross-motions for summary judgment.

### LAW APPLICABLE TO CHILD'S SSI BENEFITS

As of 1996 <u>strict</u> standards for child's SSI claims were adopted.  The Welfare

Reform Act, P.L. No. 104-193, 110 Stat. 2105, provides that:

> An individual under the age of eighteen (18) shall be considered
> disabled for the purposes of this title if that individual has a medically
> determinable physical or mental impairment which results in marked
> and severe functional limitations, and which can be expected to result
> in death, or which has lasted, or can be expected to last for a
> continuous period of not less than 12 months.

Thus, a child's SSI claim can be granted now only if there is a "marked and severe

functional limitation(s)."  The impairment must meet, medically equal, or functionally

1

Mosley for Mosley

equal in severity one of the Listing of Impairments found at 20 C.F.R. Part 404,

Subpart P, Appendix 2.  20 C.F.R. Section 416.924.

The implementing regulations require the agency to determine if the child's

impairment(s) meet any Listing of Impairments sections found at 20 C.F.R. Part

404, Subpart P, Appendix 1. 20 C.F.R. Section 416.924.  If this step is not satisfied,

the fact finder is required to consider limitation of specific functioning, broad areas

of development or functioning, episodic impairments, and limitations related to

medication effects to determine "functional equivalence" to the LOI.   Section

416.926a.  Functional equivalence is established if the child has one area of

extreme functional limitations (i.e., very serious interference with functioning) or two

areas of marked limitation (i.e., serious interference with functioning).  Id.

### DISCUSSION

The administrative law judge (ALJ) found that Mosley suffered from attention

deficit hyperactivity disorder (ADHD) and an oppositional defiant disorder.  (Tr. 18).

Nevertheless, he concluded that the child had no limitations in acquiring or using

information, moving about and manipulating objects, self-care and health and

physical well being.  (Tr. 20-22).  He found also that the child had less than

"marked" limitations in attending and completing tasks or interacting with/relating to

others, mainly due to improvements on medication and therapy.  (Tr. 20).  Thus, the

plaintiff's impairments were not significant enough to qualify for Child's SSI benefits.

(Tr. 22, 23).

2

Mosley for Mosley

The ALJ's findings were based in part on testimony from an expert witness, Dr. Douglas McKeown, who appeared at the July, 2004 hearing.  The witness testified that the ADHD was <u>not</u> at Listing level severity and that there were the same degree of impairment in separate functional domains as were ultimately found by the ALJ.  (Tr. 61).

There are many records dated prior to the October, 2002 application date.[1] Comprehensive Care Center (CCC) records show that the patient was seen since at least the year 2000 for oppositional defiant behavior.  (Tr. 198-200).  It was at first determined that the claimant's behavior was exacerbated by his mother's depression.  (Tr. 197).  As of late 2001, Mosley was aggressive to others; he also repeatedly cursed in kindergarten, apparently as a result of contact with stepuncles and cousins.  (Tr. 192).  He did have insight into his own mean behaviors, but was still overactive and aggressive.  (Tr. 183).  Apparently, he got into some type of legal difficulty at one point because of his school behavior.  (Tr. 181).  As of January, 2002, he was still "extremely defiant" despite being placed on Concerta (Tr. 177). Noting poor bonding with the claimant and his mother, and Mosley's limited empathy for others, his prognosis for success in kindergarten was felt to be "guarded." (Tr. 176).  As of mid-February, 2002, his GAF was rated at 50.  (Tr.

---

[1]The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after his application date.  <u>Casey v. Secretary of Health and Human Services</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)

175). The plaintiff was reportedly suspended from school for two days by the end of February. (Tr. 170). By early March, however, he had improved at school and his behaviors had "dramatically decreased." (Tr. 168). He continued to do well for several months (Tr. 164, 166), but no further sessions were sought and the claimant's mother eventually told the CCC staff that services are no longer needed as the plaintiff had been stable for over three months (Tr. 156-161). In short, the extreme, previous behavior ended some 8 months before the SSI application was filed.

In March, 2003, a psychoeducational evaluation was done through the plaintiff's school. The current state of health was reportedly good and it was noted that his general cognitive ability was within the average range. (Tr. 204). His academic performance ranged from superior to very low. (Tr. 207).

A consultative examination took place the following month. The claimant's mother told the examiner that her child, then a first grader, was taking Metadate twice daily and that his behavior was "much improved" compared to what it was a year before the treatment began. (Tr. 212). During testing, Mosley was active and fidgety, but able to make a good effort in a one-on-one situation. (Tr. 213). IQ testing indicated average intellectual abilities, with a large verbal performance discrepancy as seen with children with learning disabilities or ADHD. (Tr. 215). Some impulsive and oppositional qualities as well as some social deficits were noted. (Id.). The examiner concluded:

4

Mosley for Mosley

> William's general cognitive processes suggest that he is quite capable
> of doing work at or above the majority of his peers . . . .  His basic
> cognitive processes certainly do not suggest significant handicaps,
> although from research, we know that ADHD children have a greater
> probability of atypical learning disabilities.  At his young age, it is
> difficult to assess . . .

(Tr. 215).  No GAF was cited.

Medical reviewers completed assessment forms indicating that neither the

ADHD nor the oppositional defiant disorder met Listing level severity. (Tr. 217-224).

No "severe" limitations in the functional domains were noted by either reviewer, and

one reviewer did not find any "marked" limitations.  (Tr. 219-220, 226).

The plaintiff's mother apparently re-established contact with the Kentucky

River Community Care, Inc. (KRCC) only in November, 2003, over a year after the

SSI application was filed.  Moreover, at that time, as noted by the ALJ (Tr. 17), the

staff commented that the mother was vague about the plaintiff's behaviors and the

claimant actually appeared less hyperactive and aggressive than in the past.  (Tr.

237).

Meanwhile, Mary Breckinridge Health Care records indicate that, with one

exception, the plaintiff was described as doing better with his ADHD from August,

2002 to January, 2004.  (Tr. 240, 242, 243, 244, 246, 247, 248, 256, 262, 264).

Neither do the records suggest any focus on permanent physical conditions.

In summary, the records do appear to support the proposition that the child's

worst behavioral problems came months before the SSI application was filed.

5

Mosley for Mosley

Between the filing date and early 2004 (with but a few exceptions) the plaintiff was

seen as improved. Specific treatment notes refer to him as looking "very calm" (Tr.

256), being alert (Tr. 247), "doing well" (Tr. 240), appearing friendly and reportedly

not having conflicts with peers at school (Tr. 168), receiving As and Bs in academics

and showing signs of the beginnings of empathy (Tr. 164). While not every piece

of information of record supports this hypothesis,[2] substantial evidence <u>does</u> and

this is sufficient.

     The decision to deny benefits will be affirmed.

     This the 2̲9̲ day of September, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[2]Assessments from two teachers suggest greater limitations. In the later of the
two assessments by teachers, a 2004 special education teacher noted no problems
with self-help skills and commented that his IQ was high average (Tr. 152-152); the
teacher believed that Mosley did have learning disabilities in reading comprehension
and mathematics and his behavior (e.g., refusal to do work) "significantly impacted" his
academic performance (Tr. 151). These lay statements are outweighed by the other
evidence of record.